UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BARBARA ZAGAR,

                        Plaintiff,

      v.                                                    6:07-CV-685

CITY OF ROME, NY SCHOOL DISTRICT; CITY
OF ROME, NY SCHOOL DISTRICT BOARD OF
EDUCATION; THOMAS GALLAGHER, in his official
and individual capacity as Superintendent of
Schools; JEFFREY SIMONS, in his official and
individual capacity as Deputy Superintendent;
and SHEILA SPENCER, in her official and
individual capacity as Principal of Ridge Mills
Elementary School,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

NORMAN P. DEEP, ESQ.
Attorney for Plaintiff
P.O. Box 270
Sherrill, New York 13451-0207

THE LAW FIRM OF FRANK W. MILLER      IMAN ABRAHAM, ESQ.
Attorneys for Defendants                   FRANK W. MILLER, ESQ.
6575 Kirkville Road
East Syracuse, New York 13057

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Barbara Zagar ("plaintiff") brings this action against defendants Rome City

School District ("District"), Rome City School District Board of Education ("Board of

Education"), Rome City School District Superintendent Thomas Gallagher ("Gallagher"), Rome City School District Deputy Superintendent Jeffrey Simons ("Simons"), and Ridge Mills Elementary School Principal Sheila Spencer ("Spencer") (collectively "defendants"). Plaintiff asserts federal causes of action for First Amendment retaliation under the First Amendment to the United States Constitution and 42 U.S.C. § 1983 against Simons and Spencer (First), Gallagher under a theory of supervisory liability (Second), and the District and Board of Education under a theory of municipal liability (Third). Plaintiff also asserts state law causes of action for free speech retaliation (Fourth), breach of contract and tortious interference with a contract (Fifth), and defamation (Sixth).

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) & (6). Plaintiff opposes. Oral argument was heard on December 14, 2007, in Utica, New York. Decision was reserved.

## II. FACTS[1]

Plaintiff is a tenured District employee. In 2004, she taught remedial reading at Ridge Mills Elementary School ("Ridge Mills"). At Ridge Mills, plaintiff was tasked with providing academic intervention services ("AIS") to students who were at risk of falling below state standards.

Prior to the start of the 2004-05 school year, the District hired Spencer as the principal of Ridge Mills. At the inception of the 2004-05 school year, Spencer adopted a new "Guided Reading" initiative intended to help students improve their reading skills. Ridge Mills

---

[1] Since defendants move pursuant to Rule 12(b)(1) & (6), the following facts are taken directly from the complaint and stated as fact, as opposed to allegation. It should be noted, however, that only plaintiff's factual allegations, as opposed to conclusory allegations or legal conclusions, are taken as true. See Pt. III. infra.

teachers, including plaintiff, were required to incorporate the initiative into their lessons. Plaintiff immediately "expressed concerns about the appropriateness of her involvement as a remedial reading teacher in the new 'Guided Reading' initiative" because she believed that it was "intended for regular classroom reading instruction, not remedial instruction." (Am. Compl. ¶ 20.) Nonetheless, plaintiff incorporated the initiative into her lessons.

September 2004 – Plaintiff contacted the New York State Department of Education "seeking clarification about AIS parental notification procedures" and came to believe that "information provided to her by Defendant Spencer was erroneous and inconsistent with New York State standards." Id. ¶ 22.

October 2004 – Plaintiff "expressed concerns at a Rome Teacher's Association meeting about the effectiveness of AIS services the school was delivering to its neediest students, concerns that many of Plaintiff's colleagues shared." Id. ¶ 23. Shortly thereafter, Spencer issued a letter of reprimand to plaintiff for being "'resist[ant] to district change in reading instruction' and having a 'negative reaction'" to the Guided Reading initiative. Id. ¶ 25 (internal quotation marks and alteration in original). Plaintiff was further admonished for expressing her concerns at the Rome Teacher's Association ("RTA") meeting, and for contacting the Department of Education. Plaintiff responded, in writing, to the letter of reprimand, objecting to its points and generally defending her position. In her written response, plaintiff stated the following:

> I have honorably expressed valid professional concerns about the percentage of time I spend doing Guided Reading with students who don't need my expertise, as compared to the limited amount of time I now have for the type of clinical intervention that many of my students also need, and that parents and teachers are requesting. . . . My private, professional reservations, however, are a matter of opinion which I am entitled to express at "confidential" RTA building meetings. Indeed, I

> would argue that integrity . . . obliges us to speak our minds about
> instructional matters that concern the interests of the children for whom
> we are responsible. The RTA meeting referenced in Mrs. Spencer's letter
> was called for the healthy purpose of addressing morale and airing some
> of the tensions and frustrations that many teachers in our building have
> expressed feeling this year.

Id. ¶ 26 n.1 (quotation marks in original). Plaintiff copied the letter of reprimand and distributed it to her fellow teachers. She also continued to express her concerns to teachers and administrators that the Guided Reading initiative was not effective in her remedial classes.

January 2005 – Plaintiff attended a meeting with Spencer, Simons, and an RTA representative to discuss the concerns raised in the letter of reprimand and plaintiff's response thereto. It was determined at that meeting, against Spencer's objection, that plaintiff would be able to exercise some independent judgment on what to teach at the end of the day and on Friday afternoons.

May 2005 – Spencer obtained from other teachers AIS progress reports written by plaintiff, then sent plaintiff a letter instructing her to rewrite the progress reports under consequence of formal disciplinary action, because the existing reports failed to accurately inform parents of her students' progress and reflected her personal opposition to the Guided Reading initiative. Plaintiff objected to Spencer's demand and sought the intervention of the RTA.

June 2005 – Spencer issued a negative year-end evaluation of plaintiff's performance, accusing her of spending time on unapproved teaching techniques, having communication problems with other teachers, and misrepresenting the Guided Reading initiative.

<u>November 2005</u> – Plaintiff attended another meeting with Spencer, RTA representatives, and others to discuss the June 2005 year-end evaluation. In spite of her objection, plaintiff was required to participate in a teacher improvement plan mandated by the State. Spencer issued negative monthly reviews in connection with plaintiff's participation in the plan.

<u>June 2006</u> – Spencer issued a year-end evaluation which rated plaintiff's overall performance as neither satisfactory nor unsatisfactory, but noted unsatisfactory performance in two specific areas. Plaintiff objected to the evaluation and another meeting with plaintiff, Spencer, and their representative parties took place.

<u>September 2006</u> – Simons issued a letter to plaintiff indicating that she was being transferred to another school within the District due to "difficulties in [her] current assignment." (Am. Compl. ¶ 49 (alteration in original).) Plaintiff objected to the transfer and the RTA filed a grievance on her behalf. Nonetheless, the District transferred plaintiff to Lyndon H. Strough Middle School.

Plaintiff filed this action on June 29, 2007.

### III. **STANDARD OF REVIEW**

On a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. <u>Grandon v. Merrill Lynch & Co.</u>, 147 F.3d 184, 188 (2d Cir. 1998); <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir. 1995). However, factual allegations must be distinguished from "[c]onclusory allegations or legal conclusions masquerading as factual conclusions," as the latter will not be accepted as true. <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks omitted). The court's function on a motion to dismiss

is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  In this regard, Federal Rule of Civil Procedure 8(a) provides, in relevant part, "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief, and [ ] a demand for judgment for the relief the pleader seeks."  Fed. R. Civ. P. 8(a).  Thus, the pleading standard is undoubtedly a liberal one.  Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).  In more definite terms, a plaintiff's complaint will be dismissed for legal insufficiency only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

## IV. DISCUSSION

### A. Federal Claims – First Amendment Retaliation

"Public school teachers . . . do not check their First Amendment rights at the schoolhouse door when they enter public employment"; nor do they "enjoy free reign to speak out without regard to the interests of their public employer."  Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006).  Rather, a balance must be struck between a public employee's First Amendment rights and the interests of her employer.  See id.

To make out a prima facie case of First Amendment retaliation under § 1983, a plaintiff must demonstrate the following: (1) her speech was constitutionally protected; (2) she suffered an adverse employment action; and (3) the protected speech was a motivating factor in the employer's decision to take the adverse action.  Mandell v. County of Suffolk,

316 F.3d 368, 382 (2d Cir. 2003) (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); Locurto v. Safir, 264 F.3d 154, 166 (2d Cir. 2001)).

Defendants first move to dismiss plaintiff's federal causes of action for First Amendment retaliation (First, Second, and Third) on the ground that her speech, as alleged in the amended complaint, was not related to a matter of public concern and, therefore, not constitutionally protected. Speech is constitutionally protected if it can be "fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983); Morris, 196 F.3d at 110. Generally, speech is on a matter of public concern if it relates to "any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146, 103 S. Ct. at 1690; Morris, 196 F.3d at 110. More particularly, in determining whether speech is on a matter of public concern, courts must look to "the content, form, and context of a given statement, as revealed by the whole record," Connick, 461 U.S. at 147-48, 103 S. Ct. at 1690, as well as the plaintiff's motive for speaking, and "attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose," Lewis v. Cohen, 165 F.3d 154, 163-64 (2d Cir. 1999). To be sure, whether speech relates to a matter of public concern is a question of law properly determined by the court on a Rule 12(b)(6) motion to dismiss. See Connick, 461 U.S. at 147-48 n.7, 103 S. Ct. at 1690 n.7.

Plaintiff alleges that the District transferred her to another school in retaliation for her speech at the October 2004 RTA meeting and subsequent participation in union activities. Plaintiff's alleges, rather vaguely, that at the RTA meeting she "expressed concerns . . . about the effectiveness of AIS services the school was delivering to its neediest students." Id. ¶ 23. While "the effectiveness of AIS services the school was delivering to its

neediest students" may well have been of interest to the broader community – indeed, the effectiveness of <u>any</u> school program or service at <u>any</u> public school likely would be of interest to that community – it does not necessarily mean that plaintiff's speech was on a matter of public concern.  In her written response to Spencer's letter of reprimand, portions of which have been made a part of the amended complaint, plaintiff described her speech at the RTA meeting as relating to her "professional concerns about <u>the percentage of time I spend</u> doing Guided Reading with students who don't need <u>my expertise</u>, as compared to the limited amount of time <u>I now have</u> for the type of clinical intervention that many of <u>my students</u> also need, and that <u>parents and teachers</u> are requesting."  <u>Id</u>. ¶ 26 n.1 (emphases added). Plaintiff also described her speech as "<u>private, professional reservations</u> . . . which <u>I am</u> entitled to express at '<u>confidential</u>' RTA building meetings," and related to "<u>instructional matters</u> that concern the interests of the children for whom we are responsible."  <u>Id</u>. (emphases added).  Taken as a whole, plaintiff's allegations with regard to the content of her speech at the RTA meeting indicate that it was calculated to redress a personal employment-related grievance rather than a matter of public concern.  The fact that her concerns also may have been of interest to the broader community is a relevant consideration, but not dispositive of the issue.

The form and context of plaintiff's speech at the RTA meeting further supports the notion that plaintiff spoke as an aggrieved employee rather than a concerned citizen.  The RTA meeting was not open to the public.  Rather, it was a private and confidential meeting of RTA members "called for the healthy purpose of addressing morale and airing some of the tensions and frustrations that many teachers in our building have expressed feeling this year."  <u>Id</u>.  As with the fact that the broader community may have shared plaintiff's concerns,

the fact that plaintiff's speech occurred in a private setting is not dispositive, see Cioffi, 444 F.3d at 165, but it certainly is a relevant consideration.

Similarly, plaintiff's participation in union activities, which stemmed from her opposition to the Guided Reading initiative, does not constitute speech on a matter of public concern. The content and context of plaintiff's participation in union activities clearly shows that she was seeking redress of employment-related grievances as a District employee, not matters of public concern as a member of the community.

That is not to say that plaintiff was not in part motivated by what she believed to be her students' best interests. Indeed, it appears that she was. However, that alone is not enough to bring it within the protections of the First Amendment. Again, if it was enough, almost all school-related speech would be protected under the First Amendment because almost all school-related speech in some way concerns the students' interests which, in turn, is important to the broader community.

The Second Circuit's discussion of what constitutes speech on a matter of public concern in Cioffi v. Averill Park Central School District Board of Education, 444 F.3d 158 (2d Cir. 2006), is instructive. While in Cioffi the Second Circuit held that the plaintiff's speech was on a matter of public concern, the facts in that case are readily distinguishable from the facts in this case. The content of the plaintiff's speech in Cioffi related to how the school district allowed the acts of hazing and sexual abuse to occur, and how the school district went about investigating such acts – issues that were of "paramount interest" to that community, as demonstrated by the actual public outcry that occurred there. Id. at 164. In contrast, the content of plaintiff's speech at the RTA meeting, as revealed by the entire amended complaint, related primarily to whether her job duties should include teaching

Guided Reading. Any interest that the community may have had in plaintiff's speech is not comparable to that evoked by the sexually abusive and criminal incidents in Cioffi. The form and context of the plaintiff's speech in Cioffi was both private and public – he expressed his concerns in a private letter to the district superintendent and at a public press conference. In this case, plaintiff expressed her concerns privately. Again, while that is not dispositive of the issue, it is an important consideration. Applying Connick's content, form, and context test in light of the Second Circuit's holding in Cioffi, it becomes apparent that, viewed objectively and as a whole, plaintiff's speech did not address matters of public concern.

Therefore, defendants' motion for summary judgment on plaintiff's federal causes of action for First Amendment retaliation (First, Second, and Third) will be granted.

Defendants assert alternative grounds for dismissal of plaintiff's federal causes of action for First Amendment retaliation. While at this pleading stage it appears that plaintiff has met the remaining prima facie elements of a First Amendment retaliation claim, the alternative grounds for dismissal asserted by defendants need not be addressed since plaintiff has failed to allege that she engaged in constitutionally protected speech.

### B. State Law Claims

Defendants also move to dismiss plaintiff's state law causes of action (Four, Five, and Six) on various grounds.

District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. §1367(a) (2000). A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all the claims over which it has original jurisdiction. 28 U.S.C. §

1367(c); see also Federman v. Empire Fire & Marine Ins. Co., 597 F.2d 798, 809 (2d Cir. 1979). Because plaintiff's federal claims will be dismissed, it is appropriate to decline supplemental jurisdiction and dismiss plaintiff's state law claims without prejudice.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss plaintiff's federal causes of action for First Amendment retaliation (First, Second, and Third) is GRANTED and those claims are DISMISSED; and

2. Plaintiff's state law causes of action (Fourth, Fifth, and Sixth) are DISMISSED without prejudice.

IT IS SO ORDERED.

The Clerk is directed to enter judgment accordingly.

_____
United States District Judge

Dated: May 27, 2008
       Utica, New York.